UNITED STATES BANKRUPTCY COURT            NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

                    Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                    Defendant.

No. 08-01789 (CGM)

SIPA LIQUIDATION

(Substantively Consolidated)

---

In re:

BERNARD L. MADOFF,

                    Debtor.

---

IRVING H. PICARD, Trustee for the Liquidation of
Bernard L. Madoff Investment Securities LLC, and the
Chapter 7 Estate of Bernard L. Madoff,

                    Plaintiff,

v.

BNP PARIBAS ARBITRAGE SNC,

                    Defendant.

Adv. Pro. No. 11-02796 (CGM)

---

**MEMORANDUM DECISION**
**DENYING DEFENDANT'S MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
By:    David J. Sheehan
        Torello H. Calvani
        Joanna F. Wasick
        Matthew B. Friedman

*Attorneys for Defendant BNP Paribas Arbitrage SNC*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
By:    Roger A. Cooper
       Ari D. MacKinnon
       Thomas S. Kessler

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Pending before the Court is the motion of the Defendant, BNP Paribas Arbitrage SNC ("BNP Arbitrage"), to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property received from Harley International (Cayman) Ltd. ("Harley").  Defendant seeks dismissal for lack of personal jurisdiction, for failure to allege avoidability of the initial transfers, and for failure to allege that it received BLMIS customer property.  Defendant asserts the affirmative defense of "good faith" and the § 546(e) safe harbor provision of the Bankruptcy Code.  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). Personal jurisdiction has been contested by Defendant and will be discussed *infra*.

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on November 3, 2011. (Compl., ECF[1] No. 1). Via the amended complaint (the "Amended Complaint"), the Trustee seeks to recover over $1 billion in subsequent transfers of customer property that Defendant allegedly received from Harley. (Am. Compl. ¶¶ 2, 87–93, ECF No. 100).

BNP Arbitrage is a general partnership incorporated and organized under the laws of France as a *société en nom collectif*. (*Id.* ¶ 51). It is a wholly owned subsidiary of BNP Paribas S.A. (*Id.*). Defendant is alleged to maintain offices in Paris, France and on Seventh Avenue in New York, New York. (*Id.* ¶ 52).

The Amended Complaint alleges that BNP Arbitrage invested in or received customer property from Harley and at least six other separate funds which fed investments into BLMIS. (*Id.* ¶ 53). Harley was a Cayman Islands company that maintained a customer account and allegedly invested all of its assets with BLMIS. (*Id.* ¶¶ 2, 54). Harley had no employees or offices of its own and instead acted through a "fund-of-funds" manager called Fix Asset Management, Inc. ("Fix Management"), which was owned and entirely controlled by a New York resident named Charles Fix. (*Id.* ¶ 56). From New York, Fix Management allegedly

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 11-02796-cgm.

received Harley's account statements from BLMIS, corresponded directly with BLMIS for redemption requests, and marketed sales of shares to investors.  (*Id.* ¶ 57).

Defendant is alleged to be a member of the BNP Fund Derivatives Group, (the "Derivatives Group").[2]  (*Id.* ¶¶ 63–65, 78).  The Amended Complaint alleges that the Derivatives Group is made up of employees of multiple BNP Paribas entities including BNP Arbitrage.  (*Id.* ¶ 64).  The Derivatives Group allegedly created, marketed, and serviced credit facilities and financial instruments which produced millions of dollars in fees and interest for BNP Paribas S.A.  (*Id.* ¶ 65).

In 2003, BNP Paribas S.A. acquired assets of Zurich Capital Markets, Inc. ("Zurich"). (*Id.* ¶ 66).  In doing so, BNP Paribas S.A. thereby acquired 60 former Zurich employees and Zurich's portfolio which included a multi-million-dollar credit facility with Santa Barbara Holdings Ltd. ("Santa Barbara").  (*Id.* ¶¶ 66–68).  Santa Barbara is described in the Amended Complaint as a Fixed Management fund that invested entirely in Harley.  (*Id.* ¶ 68).  In 2004, BNP Paribas S.A., through the Derivatives Group, allegedly executed a credit facility with Santa Barbara.  (*Id.* ¶ 69).  The credit facility called for BNP Paribas S.A. to make loans to Santa Barbara for investments with Harley and "explicitly referenced Harley's 'Madoff Account' with BLMIS as collateral for the credit facility."  (*Id.* ¶¶ 69–71).  The Amended Complaint further alleges that BNP Paribas Securities Corp. operated as a calculation agent for the facility and as a collateral agent.  (*Id.* ¶¶ 73–74).  It was through Defendant's relationship with these entities that Defendant allegedly received transfers of over $1 billion in BLMIS customer property from Harley between 2003 and 2008.  (*Id.* ¶ 74).

---

[2] The Derivatives Group is itself alleged to be a part of an overarching BNP Paribas enterprise called the Global Equity & Derivatives Division.  (Am. Compl. ¶ 63).

The Trustee commenced a separate adversary proceeding against Harley in May 2009 to avoid and recover initial transfers of customer property from BLMIS to Harley in the amount of $1,072,800,000. (*Id.* ¶ 82); (*see also* Compl., Adv. Pro. No. 09-01187, ECF No. 1) (the "Harley Complaint"). On July 8, 2009, this Court entered summary judgment against Harley in the amount of $1,066,800,000 and default judgment against Harley in the amount of $6,020,000. (Am. Compl. ¶ 83, ECF No. 100). The Amended Complaint states that the Trustee has not recovered any money from this judgment. (*Id.*).

The Amended Complaint alleges that Harley transferred $1,054,960,052 of BLMIS customer property to BNP Arbitrage. (*Id.* ¶ 87). The Trustee seeks recovery of these transfers under § 550(a) of the Bankruptcy Code and applicable SIPA provisions. (*Id.* ¶¶ 88, 91).

In its motion to dismiss, Defendant argues that the Amended Complaint fails to establish this Court's personal jurisdiction over Defendant, fails to allege that Defendant received BLMIS customer property, does not demonstrate that the subsequent transfers were composed of BLMIS customer property, and does not adequately plead the avoidability of the initial transfers. (Mem. L. at 1–2, ECF No. 104). Defendant argues that it is entitled to the affirmative defense of "good faith" and "for value" and the § 546(e) "safe harbor." (*Id.*). The Trustee opposes the motion to dismiss. (Opp'n, ECF No. 106). The Parties waived oral arguments on the motion and agreed to rest on their papers. (Stip. and Order, ECF No. 109).

## Discussion

### Personal Jurisdiction

Defendant objects to the Trustee's assertion of personal jurisdiction. In the Amended Complaint, the Trustee argues that BNP Arbitrage purposefully availed itself of the laws of the United States and New York. (Am. Compl. ¶ 77, ECF No. 100).

Page **5** of **26**

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same). At the pre-discovery stage, the allegations need not be factually supported. *See* 722 F.3d at 85 (an averment of facts is necessary only after discovery). The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *BNP Paribas S.A.*, 594 B.R. at 187.

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which the defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'"  *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 516 (Bankr.

S.D.N.Y. 2012) ("*BLI*") (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant.  First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct.  Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

Purposeful Availment

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the

privilege of doing business in the forum and could foresee being haled into court there." *Charles*

*Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).  "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the

plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an

insufficient basis for jurisdiction." *U.S. Bank*, 916 F.3d at 150 (cleaned up).  "It is insufficient to

rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a

plaintiff with the forum to establish specific jurisdiction." *Id.*  A party "purposefully avail[s]

itself of the benefits and protections of New York laws by knowing, intending and contemplating

that the substantial majority of funds invested in [a BLMIS feeder fund] would be transferred to

BLMIS in New York to be invested in the New York securities market." *BLI*, 480 B.R. at 517.

The Amended Complaint alleges that BNP Arbitrage "knowingly directing funds to be

invested with New York-based BLMIS through Harley."  (Am. Compl. ¶ 77, ECF No. 100).

This Court has stated on multiple occasions that this allegation is legally sufficient to show that

the Defendant purposefully availed itself of the forum.  *See, e.g., Picard v. Banque Lombard*

*Odier & Cie SA (In re BLMIS)*, No. 22 Civ. 6561 (LGS), 2023 WL 395225, at *4 (S.D.N.Y. Jan. 25, 2023).  That being said, this was not the only contact alleged.

In the Amended Complaint, the Trustee alleges Defendant maintained an office on Seventh Avenue in New York as part of the so-called Derivatives Group.  (Am. Compl. ¶ 78, ECF No. 100).  The subsequent transfers at issue here arise from the Derivatives Group's New York contacts.  (*Id.* ¶¶ 74, 80).  Defendant allegedly worked with other members of the Derivatives Group on "transactions relating to investments with Harley" and the transfers the Trustee now seeks to recover.  (*Id.*).  The Amended Complaint further alleges that Defendant knew that Harley's executing broker for the purported split-strike conversion strategy and investment advisor was BLMIS in New York.  (*Id.* ¶ 79).  The split-strike strategy conversion involved the purchase and sale of shares of U.S. equities, options, and Treasury bills.  (*Id.*).  Defendant received each of the transfers sought here in a bank account in New York, NY, owned by BNP  Paribas S.A.  (*Id.*  ¶ 80); (*Id.* Ex. C).  The Amended Complaint further alleges that Harley acted through its New York-based manager, Fix Management, and had no employees or offices of its own.  (*Id.* ¶¶ 56–57).  The transfers Defendant received from Harley came from these New York contacts.  (*Id.* ¶¶ 56–62).

The Amended Complaint contains allegations that are legally sufficient to constitute a prima facie showing of jurisdiction.  *Dorchester Fin.,* 722 F.3d at 85; *see also Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018).  "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact."  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  "[Defendant] intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the

United States and reap the benefits therefrom." *BLI*, 480 B.R. at 506. Defendant's alleged contacts with New York are not random, isolated, or fortuitous.

Arise out of or relate to the Defendant's forum conduct

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *BNP Paribas S.A.*, 594 B.R. at 190 ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against BNP Arbitrage for monies it received from the BLMIS feeder fund, Harley. (Am. Compl. ¶¶ 80–93). These allegations are directly related to its investment activities with the feeder fund. *See BNP Paribas S.A.* 594 B.R. at 191 (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from New York contacts including sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress). The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Reasonableness

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over the Defendants is reasonable and "comport[s] with fair play and

substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal

quotations omitted). Where, as here, the plaintiff has made his case to show the necessary

minimum contacts, the "defendant must present a compelling case that the presence of some

other considerations would render jurisdiction unreasonable." *MSP Recovery Claims, Series*

*LLC*, 2021 WL 4461773, at *3 (quoting *Bank Brussels Lambert v. Fiddler Gonzalez &*

*Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002)). Factors the Court may consider include the

burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's

interest in obtaining convenient and effective relief, the interstate judicial system's interest in

obtaining the most efficient resolution of controversies, and the shared interest of the several

States in furthering fundamental substantive social policies. *471 U.S.* at 476–77.

Both the forum and the Trustee have a strong interest in litigating the BLMIS adversary

proceedings in this Court. *See Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460

B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In*

*re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re*

*BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re*

*Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917

F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic

estates to recover fraudulently transferred property.").

Defendant argues that it would be unreasonable to exercise jurisdiction over it, thereby

forcing it "to litigate far from home and at great expense." (Reply at 10, ECF No. 108). This

does not demonstrate a sufficiently heavy burden. "Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010); *see also In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 273 (2d Cir. 2023). Furthermore, Defendant was allegedly part of a group of BNP entities with offices in New York. (Am. Compl. ¶ 64). BNP Arbitrage is represented by U.S. counsel and has participated in this litigation for over a decade. (*See, e.g.,* Mot. to Withdraw Reference, ECF No. 7). The exercise of jurisdiction is reasonable.

By alleging that Defendant intentionally invested in BLMIS through a known BLMIS feeder fund, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. And by alleging that Defendant received funds from investments with a BLMIS feeder fund, the Trustee has met his burden of alleging jurisdiction over each transfer that received through a New York bank account.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). The Trustee has made a prima facie showing of personal jurisdiction with respect to all of the subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover subsequent transfers made received by BNP Arbitrage from Harley. (Am. Compl. ¶ 2, ECF No. 100).

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*("*Cohmad*"), No. 12 MC 115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013). "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the subsequent transfer." *BNP Paribas,* 594 B.R. at 195 (*citing Sharp Int'l Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's burden at the pleading stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much – of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Id.*

While the Trustee must allege that the initial transfer from BLMIS to Harley is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action

against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706–07 (11th Cir. 2005). The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *Id.*

Section 550(a) allows recovery of a transfer "to the extent that [that] transfer is avoided under" certain provisions of the Bankruptcy Code. 11 U.S.C. § 550(a). Over a decade ago, this Court analyzed "whether Section 550 requires a trustee to formally avoid an initial transfer to permit recovery against a subsequent transferee or if the mere avoidability of such transfer is sufficient." *BLI*, 480 B.R. 501, 520 (Bankr. S.D.N.Y. 2012). This Court answered that "the Trustee may recover from [the subsequent transferee] under Section 550 because the Trustee timely filed a complaint against [initial transferee] Fairfield Sentry alleging that the initial transfers from BLMIS to Fairfield Sentry are 'avoidable' under section 548 of the Code." *Id.* In the Amended Complaint, the Trustee states that he "commenced a separate adversary proceeding against Harley in the Bankruptcy Court under the caption, *Picard v. Harley Int'l (Cayman) Ltd.*, Adv. Pro. No. 09- 01187, to avoid and recover initial transfers of customer property from BLMIS to Harley in the amount of $1,072,800,000." (Am. Compl. ¶ 82, ECF No. 100). The Amended Complaint further states that this Court "entered summary judgment against Harley in the amount of $1,066,800,000, and a default judgment against Harley in the amount of $6,020,000, for a total judgment against Harley in the amount of $1,072,820,000, from which no appeal was taken . . . . The Trustee has not yet recovered any monies as a result of the November 10, 2010 Judgment." (*Id.* ¶ 83). Through these allegations, the Trustee has pled that the initial transfers were avoided for purposes of ¶ 550(a). Notwithstanding the prior avoidance, the Amended Complaint includes allegations that establish the avoidability of these initial transfers.

Whether the Amended Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b).  Rule 9(b) states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

Because the Trustee has pleaded that BLMIS operated a Ponzi scheme, the Trustee's burden of pleading actual fraudulent intent is satisfied.  (Am. Compl. ¶¶ 19–40); (*id.* ¶ 12) (Madoff pleaded guilty and admitted he operated a Ponzi scheme through BLMIS); (*id.* ¶ 13) ("Frank DiPascali, a former BLMIS employee, pleaded guilty to . . . participating in and conspiring to perpetuate the Ponzi scheme. DiPascali admitted that no purchases or sales of securities took place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s."); (*id.* ¶ 14) ("David Kugel, a former BLMIS trader and manager, . . . Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.").

The Defendant argues that the Trustee should not be allowed to rely on the Ponzi scheme presumption.  (Mem. L. at 14, ECF No. 104).  The "Ponzi scheme presumption" allows courts to presume actual intent to defraud on part of the operator of the Ponzi scheme.  *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("The mere existence of a Ponzi scheme is sufficient to

establish actual intent to defraud.").  In this case, the Ponzi scheme presumption allows the Court

to presume that BLMIS made the initial transfers with actual intent to defraud because Madoff

has admitted to operating a Ponzi scheme.

The mere existence of a Ponzi scheme "demonstrates actual intent as matter of law

because transfers made in the course of a Ponzi scheme could have been made for no purpose

other than to hinder, delay or defraud creditors."  *Bear Stearns Secs. Corp. v. Gredd* (*In re

Manhattan Inv. Fund Ltd.*), 397 B.R. 1, 8 (S.D.N.Y. 2007).  The "Ponzi scheme presumption"

makes perfect sense in cases such as this one.  BLMIS had no legitimate assets and therefore

every transfer made by BLMIS was made with actual intent to defraud in order to ensure that

Ponzi scheme would survive.

The Trustee has pleaded that BLMIS operated a Ponzi scheme and as such, BLMIS's

actual fraudulent intent is presumed via the Ponzi scheme presumption.  (Am. Compl. ¶¶ 12–14,

19–41).  Intent to defraud is established as debtor operated a Ponzi scheme. *Picard v. Cohen*,

Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016)

(citing *Omnibus Good Faith Decision*, 531 B.R. at 471) ("[T]he Trustee is entitled to rely on the

Ponzi scheme presumption pursuant to which all transfers are deemed to have been made with

actual fraudulent intent."); *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 330 (Bankr. S.D.N.Y.

2011) ("[T]he fraudulent intent on the part of the debtor/transferor . . . is established as a matter

of law by virtue of the 'Ponzi scheme presumption' . . . .").  That BLMIS operated as a Ponzi

scheme is well-established and the Court relies on earlier findings of same and holds that the

Trustee has met his burden of pleading BLMIS's actual intent on this issue.  *See Picard v.

Legacy Capital Ltd.*, 603 B.R. 682, 688-93 (Bankr. S.D.N.Y. 2019) (discussing in detail that

BLMIS was a Ponzi scheme and why the Trustee is permitted to rely on the Ponzi scheme

presumption to prove intent as a matter of law); *see also Bear Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007) ("[T]he Ponzi scheme presumption remains the law of this Circuit.").

Defendant describes the Ponzi scheme presumption as a "not well-settled" a "questionable" application fraudulent transfer statutes. (Mem. L. at 15, ECF No. 104). Defendant argues that this Court should adopt the reasoning set forth in Judge Menashi's concurrence in *Citibank*. *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, (2d Cir. 2021).

This Court has re-read Judge Menashi's concurrence in *Citibank* and finds it to be unpersuasive. The Ponzi scheme presumption does not turn would-be preferences into fraudulent transfers. All the Ponzi scheme presumption does is save the Trustee's and the Court's time and resources by presuming that each transfer was made with actual fraudulent intent. As the District Court has stated, "[n]otwithstanding Judge Menashi's concerns, 'the Ponzi scheme presumption remains the law of this Circuit.'" *Picard v. Sage Realty*, No. 20 CIV. 10057 (JFK), 2022 WL 1125643, at *28 (S.D.N.Y. Apr. 15, 2022), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, No. 22-1107, 2023 WL 5125596 (2d Cir. Aug. 10, 2023), and *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, No. 22-1107, 2023 WL 5439455 (2d Cir. Aug. 24, 2023) (citing *Gredd*, 397 B.R. at 11); *see also Brown v. Picard (In re BLMIS)*, No. 22-CV-3882 (VEC), 2023 WL 4744195, at *5 (S.D.N.Y. July 25, 2023) ("The Bankruptcy Court correctly concluded that the transfers at issue in this case are subject to the presumption of fraudulent intent that applies to a Ponzi scheme."). The Court agrees with "every court to opine on the application of the presumption in the context of the BLMIS Ponzi scheme" and will not now discard the presumption. *Sage Realty*, 2022 WL 1125643, at *28.

The Ponzi scheme presumption saves the Trustee and the courts time and resources by presuming that each transfer was made with actual fraudulent intent. Without the presumption, Defendant would not be "off-the-hook" for the two-year transfers because the Trustee would meet (and, in this case, has met) his pleading burden by pleading the "badges of fraud" with respect to BLMIS. Badges of faud include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the event and transactions under inquiry.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983). The "concealment of facts and false pretenses by the transferor" is also a circumstance from which courts have inferred intent to defraud. *Id.* at 1582 (quoting 4 *Collier on Bankruptcy* ¶ 548.02[5] at 548-34 to 38 (L. King 15th ed. 1983)). The existence of several badges can "constitute conclusive evidence of an actual intent to defraud." *Kirschner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*, No. 11-md-2296 (RJS), 2017 WL 82391, at *13 (S.D.N.Y. Jan. 6, 2017) (citation omitted); *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 235 (Bankr. S.D.N.Y. 2019).

BLMIS's actual fraudulent intent is well-pleaded in the Amended Complaint. *(See* Am. Compl. ¶¶ 19–40). The Court need not infer intent to defraud because Madoff has admitted that he had actual intent to defraud when he admitted under oath that he operated a Ponzi scheme. (*Id.* ¶ 49). The Trustee has alleged that "BLMIS's website omitted the I[nvestment] A[dvisory] Business entirely" and that "BLMIS did not register as an investment adviser with the SEC until 2006, following an investigation by the SEC, which forced Madoff to register." (*Id.* ¶ 22). "For more than 20 years preceding that registration, the financial reports BLMIS filed with the SEC

fraudulently omitted the existence of billions of dollars of customer funds BLMIS managed through its I[nvestment] A[dvisory] Business.  (*Id.* ¶ 23).  BLMIS lied to the SEC in reports regarding the number of accounts it has and "grossly understated" the amount of assets under management.  (*Id.* ¶ 24).  BLMIS had no legitimate business operations and produced no profits or earnings.  (*Id.* ¶ 25)  "Madoff was assisted by several family members and a few employees, including Frank DiPascali, Irwin Lipkin, David Kugel, Annette Bongiorno, JoAnn Crupi, and others, who pleaded to, or were found guilty of, assisting Madoff in carrying out the fraud." (*Id.*). "BLMIS reported falsified trades using backdated trade data on monthly account statements sent to BLMIS customers that typically reflected impossibly consistent gains on the customers' principal investments."  (*Id.* ¶ 33).

> "Madoff could not be using the SSC Strategy because his returns drastically outperformed the market. BLMIS showed only 16 months of negative returns over the course of its existence compared to 82 months of negative returns in the S&P 100 Index over the same time period. Not only did BLMIS post gains that exceeded (at times, significantly) the S&P 100 Index's performance, it would also regularly show gains when the S&P 100 Index was down (at times significantly). Such results were impossible if BLMIS had actually been implementing the SSC Strategy."

(*Id.* ¶ 40).  "There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC Strategy at The Depository Trust & Clearing Corporation, the clearing house for such transactions, its predecessors, or any other trading platform on which BLMIS could have traded securities."  (*Id.* ¶ 46).

Though unnecessary, the Trustee has sufficiently pleaded multiple badges of fraud.  The Trustee need not plead all six badges of fraud to meet his burden of pleading actual fraudulent intent.  *In re May*, 12 B.R. 618, 627 (N.D. Fla. 1980) ("Such indicators or badges, when established either singularly, but more often in combination, may justify the inference of the requisite intent to hinder, delay or defraud creditors.").

**Reasonably Equivalent Value**

Defendant argues that the Amended Complaint "includes no allegations that BNPP Arbitrage or Harley gave less than 'reasonably equivalent value' to BLMIS in exchange for any of the alleged transfers." (Mem. L. at 17, ECF No. 104) (arguing that the "return of principal" is "reasonably equivalent value," and that there are no allegations that the transfers comprised "fictitious profits . . . in excess of principal.").

Section 548(a)(1) authorizes a trustee to recover transfers interest of the debtor in property if the debtor:

> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; **or**
> (B)
>> (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and . . . .

11 U.S.C. § 548(a)(1)(A)–(a)(1)(B)(i) (emphasis added). As discussed above, the Trustee has alleged that BLMIS had actual intent to hinder, delay, or defraud creditors. A cause of action under § 548(a)(1)(A) requires a different showing from a cause of action under § 548(a)(1)(B)(i). *See Grochocinski v. Schlossberg (In re Eckert)*, 388 B.R. 813, 830 (Bankr. N.D. Ill. 2008) ("A cause of action under § 548(a)(1)(A) is commonly referred to as 'actual fraud' because of the element of the debtor's actual intention to hinder, delay, or defraud creditors . . . A cause of action under § 548(a)(1)(B), on the other hand, is often referred to as "constructive fraud" because it omits any element of intent."); *see also Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp., LLC)*, 362 B.R. 624, 630 (Bankr. S.D.N.Y. 2007) ("[U]nder Section 548(a)(1)(A), 'the entire transfer may be avoided, even if reasonably equivalent value was given, so long as the transferor actually intended to hinder, delay or defraud its creditors and the transferee accepted the transfer without good faith'") (quoting *Hayes v. Palm Seedlings*

*Partners-A (In re Agric. Research and Tech. Group, Inc.)*, 916 F.2d 528, 538 (9th Cir. 1990)).

The Trustee need not plead the elements of § 548(a)(1)(B) in order to meet his burden under §

548(a)(1)(A).

**The Safe Harbor Does Not Bar the Avoidance of the Initial Transfers**

Defendant has raised the "safe harbor" defense, found in § 546(e), to the Trustee's

allegations. (Mem. L. at 17, ECF No. 104). Section 546(e) is referred to as the safe harbor

because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of)

a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of)

a ... financial institution [or] financial participant ... in connection with a securities contract." 11

U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the *initial*

transfer." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018)

(emphasis in original).

The limitations on the trustee's avoiding powers set forth in section 546(e) expressly do

not apply to § 548(a)(1)(A) of the Bankruptcy Code. 11 U.S.C. §§ 546(e), 548(a)(1)(A); *see also*

5 Collier on Bankruptcy P 546.06 (16th 2023). The Amended Complaint seeks recovery of

transfers made to Harley within two years of the filing date. (Am. Compl. ¶¶ 84–85); (*id.* Ex. B).

None of the transfers at issue here fall within the safe harbor provision of §546(e). By its plain

terms, the §546(e) safe harbor does not apply to shield the transfers here.

**BLMIS Customer Property**

Defendant argues that the Amended Complaint fails to plead that transfers were

composed of BLMIS customer property. (Mem. L. at 9, ECF No. 104). The Trustee has pleaded

that "[b]ased on the Trustee's investigation to date, Harley transferred $1,054,960,052 in

subsequent transfers of BLMIS customer property to BNP Paribas Arbitrage." (Am. Compl. ¶

87, ECF No. 100); (*see also id.* Ex. C). The Amended Complaint sets forth the initial transfers

of customer property from BLMIS to Harley. (*Id.* Ex. A, B). The exhibits to the Amended

Complaint provide Defendant with the exact date and amount of each transfer the Trustee is

seeking to recover. These exhibits show the "who, when, and how much" of each transfer. *BNP*

*Paribas S.A.*, 594 B.R.at 195.

Defendant argues that the Amended Complaint fails to tie the initial transfers from

BLMIS to Harley to the subsequent transfers made to Defendant. (Mem. L. at 10, ECF No. 104)

("Because the Amended Complaint fails to specify which, or what portion, of the Initial

Transfers were subsequently transferred by Harley to BNPP Arbitrage, it necessarily fails to

show that BNPP Arbitrage received customer property."). The Court has already addressed this

argument in its multitude of prior decisions in similar Fairfield Sentry subsequent transfer

proceedings. *See, e.g., Picard v. Parson Fin. Panama S.A. (In re BLMIS)*, No. 08-01789 (CGM),

2022 WL 3094092, at *10–11 (Bankr. S.D.N.Y. Aug. 3, 2022).

> The Fairfield Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); see also (Fairfield Compl. ¶ 91) ('From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS.').
>
> The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property. Defendants ask this Court to consider allegations made in the other complaints filed by the Trustee in this SIPA proceeding. Memo. L. at 22, ECF No. 93. These complaints have not been adopted by reference by the Trustee in this adversary proceeding and, as such, are not within the Court's power to consider on a Rule 12(b)(6) motion. *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ('A district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.') (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).
>
> Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Parson received customer

> property because Fairfield Sentry did not have other property to give. The
> calculation of Fairfield Sentry's customer property and what funds it used to make
> redemption payments are issues of fact better resolved at a later stage of litigation.

*Id.*  Similarly, the Amended Complaint has plead that the feeder fund, Harley, invested entirely

in BLMIS.  (Compl. ¶ 78, ECF No. 1) ("BLMIS in New York maintained custody of 99.99% of

Harley's assets.").  The Amended Complaint plausibly alleges that Harley did not have any

assets that were not customer property.  Taking all allegations as true and reading them in a light

most favorable to the Trustee, the Amended Complaint plausibly pleads that Defendant received

customer property because Harley did not have other property to give. The determination of

which specific funds it used to make redemption payments are issues of fact better resolved at a

later stage of litigation.

**Whether Defendant took the transfers for value, in good faith, and without knowledge of
the voidability of the initial transfers?**

Defendant has raised the "good faith defense" under § 550(b), arguing that this Court

should dismiss the Trustee's complaint because it took  the transfers "for value," in good faith,

and without knowledge of the voidability of the transfers under section 550(b)."  (Mem. L. at 11,

ECF No. 104).

"An affirmative defense may be raised by a pre-answer motion to dismiss under Rule

12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of

the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).  "Not

only must the facts supporting the defense appear on the face of the complaint, but, as with all

Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim that would entitle him to relief."

*McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (cleaned up).  A "plaintiff is entitled to all

reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [affirmative] defense." *Id.*

       i.      *For Value*

The "value" that a subsequent transferee must provide is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value." *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548 B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005). In addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than what the transferor received.

Defendant argues that receiving transfers as repayment of loaned funds "by means of a subsequent transfer from a Feeder Fund" constitutes "for value." (Mem. L. at 11, ECF No. 104). This Court has found that allegations that a defendant has been repaid for loans with shares of the Prime Fund, a separate BLMIS feeder fund, constituted value on the face of the complaint. *See Picard v. Citibank, N.A.* (in re BLMIS), 608 B.R. 181, 195 (Bankr. S.D.N.Y. 2019). The Court found that the payments beyond the initial loan amount "coincided with the life of the loan" and appeared from the exhibits attached to the complaint to be "monthly payments of fees or interest, or both." 608 B.R. at 195. The Trustee responds only that this Court has determined that value cannot be determined on a motion to dismiss. (Opp'n at 18–19). Whether the value element is met on the face of the Amended Complaint here is not determinative. The Defendant has failed to meet the other elements required for the affirmative defense.

ii.    *Good Faith*

Where, in light of surrounding circumstances, a transferee should have known of the debtor's precarious financial condition, the transferee will be deemed to have taken in bad faith, unless an investigation into the debtor's financial condition actually discloses no reason to suspect financial trouble.  2 Bankruptcy Desk Guide § 19:105.  The District Court explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The Second Circuit made clear in its decision in [*Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022)] that the inquiry notice standard requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees.'"  *In re BLMIS, LLC*, 20-cv-02586 (CM), 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022).  And that "such a fact-based determination can only be made based on the entirety of the factual record after discovery . . . ."  *Id.* (internal quotation omitted).  The burden of proving good faith falls squarely on Defendant, and this Court cannot make a determination on Defendant's affirmative defense until after a fact-intensive inquiry.

iii.    *Knowledge of the Voidability*

Good faith is linked with whether one had knowledge of the voidability of the transfer.  *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d 217, 142 S. Ct. 1209 (2022).  Having determined that "good faith" cannot be found on the face of a complaint, the Court must deny the Defendant's motion on this element.  Additionally, § 550(b)(1) provides a defense to recovery making lack of knowledge Defendants' burden to plead

and prove.  It is a fact-intensive inquiry that requires a three-step inquiry into 1) what Defendant subjectively knew; "whether these facts put [Defendant] on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the [Defendant's] position to conduct further inquiry into a debtor-transferor's possible fraud; and whether "diligent inquiry by [Defendant] would have discovered the fraudulent purpose of the transfer." *Id.* at 192.  It is not appropriate for the Court to resolve these factual issues at this stage of the litigation.

<u>Conclusion</u>

For the foregoing reasons, Defendant's motion to dismiss is denied.  The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via EOrders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**/s/ Cecelia G. Morris**
_____
**Dated: December 28, 2023**          **Hon. Cecelia G. Morris**
**Poughkeepsie, New York**          **U.S. Bankruptcy Judge**